JOHN H. PODESTA (SBN 154706)
John.Podesta@wilsonelser.com
Dawn A. Silberstein  (SBN 167936)
Dawn.Silberstein@wilsonelser.com
**WILSON ELSER MOSKOWITZ**
 **EDELMAN & DICKER LLP**
525 Market Street – 17th Floor
San Francisco, CA  94105-2725
Telephone:  (415) 433-0990
Facsimile:  (415) 434-1370

Attorneys for Plaintiff Ironshore Specialty
Insurance Co.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>                        Plaintiff,<br><br>v.<br><br>HELIX ELECTRIC, INC., KISAQ-RQ 8A 2JV and DOES 1 through 10<br><br>                        Defendants. | Case No.:  **'17 CV 2589 CAB AGS**<br><br>Complaint Filed:<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF REGARDING DUTY TO DEFEND;**<br><br>**(2) DECLARATORY RELIEF REGARDING DUTY TO INDEMNITY; AND**<br><br>**(3) EQUITABLE REIMBURSEMENT OF DEFENSE COST**<br><br>**AND REQUEST FOR JURY TRIAL** |

Plaintiff, Ironshore Specialty Insurance Company ("Plaintiff" or "Ironshore"), for its Complaint against Defendant, Helix Electric, Inc., Defendant, KISAQ-RO 2JV, and DOES 1 through 10 ("Defendants"), alleges as follows:

        ///

1
**COMPLAINT**

1

**DEMAND FOR JURY TRIAL**

2      1.      Plaintiff demands a trial by jury on all issues triable by jury in the

3  above entitled action.

4

**FEDERAL JURISDICTION AND VENUE**

5      2.      This Court has original jurisdiction over this action pursuant to 28

6  U.S.C. Section 1332, because there is complete diversity of citizenship between

7  Plaintiff and Defendants and the amount in controversy exceeds $75,000.

8      3.      Venue is proper in the Southern District of California, because a

9  substantial portion of the events and omissions giving rise to Plaintiff's claims

10  occurred in San Diego County, California; the underlying liability lawsuit out of

11  which Plaintiff's claim arises is venued in this District.

12

**PARTIES**

13      4.      Plaintiff, at all times mentioned herein is, and was, a corporation duly

14  organized and existing under the laws of the State of Arizona , with its principal

15  place of business in New York, NY headquartered in New York, NY . At all times

16  mentioned herein, Plaintiff is, and was, a Surplus Lines insurer conducting

17  business in the State of California.

18      5.      Defendant, KISAQ-RQ 8A 2JV, ("KISAQ") at all times mentioned

19  herein is, and was, a joint venture with its principal place of business in Carlsbad,

20  San Diego County, California, and authorized to do business for the United States

21  of America as a general contractor on federal public works projects. KISAQ is

22  presently claiming damages and is a potential judgment creditor of HELIX, and

23  thus a third party beneficiary upon obtaining a judgment of the HELIX/Ironshore

24  insurance policies at issue in this matter.

25      6.      Defendant Helix Electric, Inc. ("HELIX") is a corporation duly

26  organized and existing under the laws of the State of California with its principal

27  place of business located in San Diego, California.

28

1756764v.1

7.     Plaintiff is informed and believes and, based thereon, alleges that DOES 1 through 10 are businesses licensed to do business in the State of California or conducting business therein.  The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES 1 through 10 are unknown to Plaintiff at this time, and for that reason Plaintiff sues said defendants by fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained.

8.     Plaintiff is informed and believes and, based thereon, alleges that each of the fictitiously named defendants designated as DOES 1 through 10 are in some manner legally responsible to Plaintiffs for the acts, omissions and damages set forth in this Complaint, or to contribute to the cost of defense and/or indemnity already paid and to be paid by Plaintiff.  Plaintiff will request leave to amend this Complaint to set forth the true names and capacities of these DOE defendants when the same are ascertained.  The defendants identified above, and DOES 1 through 10, inclusive, are hereafter sometimes referred to individually and collectively as "Defendants."

## GENERAL ALLEGATIONS

### The Insurance Policies

9.     Plaintiff insured Defendant Helix under three consecutive General Liability policies bearing nos. 000693704, 000693705 and 000693706 to Helix Electric, Inc. covering three successive annual policy periods commencing October 31, 2013 through October 31, 2016 (hereinafter "the Policies").  True and correct copies of the Policies are attached hereto as **Exhibit A-1, A-2 and A-3).**

10.     The Policies insuring agreement of the Policies provided liability coverage under **COVERAGE A – Bodily Injury And Property Damage Liability** which provided in pertinent part:

1756764v.1

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

11.    The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

12.    The Policies define "property damage" as: "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

13.    The Policies exclude coverage for certain liability under Section I — Coverages A, 2 Exclusions.

14.    The Policies exclude coverage for:

**2. Exclusions**

This insurance does not apply to:

…

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)      That the insured would have in the absence of the contract or agreement; or

(2)      Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

…

**J. Damage To Property**

"Property damage" to:

…

(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "productscompleted operations hazard".

…

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

1756764v.1

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**The Underlying Action**

15.     On approximately November 3, 2011, Defendant Helix entered into a subcontract agreement ("the Subcontract") with general contractor Defendant KISAQ to perform electrical work at a federal construction project in Cherry Point, North Carolina known as P136 Bachelor Enlisted Quarters ('the Project"). The total price of the Subcontract was $6,235,466.50.

16.     As a result of allegedly defective and non-conforming work, KISAQ filed a counterclaim in that action entitled *United States of America for Use and Benefit of Helix Electric, Inc., v . KISAQ RQ 8A 2JV*, in the USDC, Southern District of California case number 15.CV 1024-WQH-KSC against HELIX. ("Underlying Action")   Plaintiff refers herein to the Underlying Action for the purposes of illustrating the claims being made by KISAQ, and takes no position as to their truth or falsity.

17.     According to the Counterclaim, defendant Helix: (1) failed to complete the work in accordance with quality and productivity requirements; (2) failed to adequately man the Project; (3) failed to meet minimum quality control standards which resulted in multiple failed inspections and need to repair, replace, or remove the Insured's work; (4) failed to follow safety protocols which caused the Navy to suspend the Project on July 31, 2014; (5) did not provide the required correction plan in response to the suspension of work until august 27, 2014; (6) failed to resume work after the Navy authorized work to resume; and (7) failed to meet performance deadlines.

18.     As a result, in the Counter Claim, defendant KISAQ claims it had to supplement Defendant Helix's work force with others because defendant Helix failed to provide sufficient manpower to keep the project on schedule.

19.     In January of 2015, defendant Helix demobilized from the Project although the Subcontract had not been completed.  Despite being served with a 48 hour notice to cure, defendant Helix did not return to the Project.  Therefore, defendant KISAQ alleged it was required to replace defendant Helix with other workers and incur a cost in excess of $2 million to correct and complete the work defendant Helix was required to perform under the Subcontract.  A True and correct copy of the KISAQ answer and counterclaim is attached hereto as **Exhibit B.**

///

1756764v.1

20.    The first claim for relief is for breach of the Subcontract Agreement. KISAQ alleges that it served the Insured with multiple notices to cure for various reasons including the Insured's inability to staff the project properly, but that defendant HELIX failed to cure the breaches and left the work site.  Defendant HELIX is alleged to have breached the Subcontract by failing to provide a sufficient and qualified work force, committing errors in construction and for providing inadequate supervision.

21.    The second claim for relief is for recovery under performance and payment bond against cross-defendant, Travelers.

22.    HELIX tendered the Underlying Action to Plaintiff and Plaintiff agreed to provide HELIX a defense under full reservation of rights, including the right to seek reimbursement of monies spent in defense of uncovered claims under the California Supreme Court holding of *Buss v. Superior Court* (1997) 16 Cal.4th 35.

23.    Ironshore repeatedly requested additional information to support a claim that the Underlying Action alleged any covered "property damage" caused by HELIX's work.  To date, neither HELIX nor KISAQ has provided evidence of any consequential "property damage."  Rather, the Underlying Action alleges defective installation of electrical components at the project and resulting costs to replace and/or complete HELIX's defective work for which there is no potential coverage under the Policies.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Against all Defendants Regarding Duty to Defend)

### (Against All Defendants)

24.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 24 above as though fully set forth herein.

///

///

1756764v.1

25.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights, duties and obligations, arising from the terms, provisions and conditions set forth in the Policies.

26.     Plaintiffs contend that under the terms and conditions of the Policies, there was never any obligation to defend HELIX against the claims asserted in the Underlying Action, and there is currently no such duty.  Based upon information and belief, Defendants' position is the contrary.

27.     An actual and present controversy now exists between Plaintiffs and Defendants concerning Plaintiffs' duty to defend HELIX in the Underlying Action. Therefore, a judicial determination is necessary and appropriate under the circumstances.  Plaintiffs seek this declaration against both HELIX and KISAQ.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Regarding Duty to Indemnify)

### (Against All Defendants)

28.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 28 above as though fully set forth herein.

29.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights, duties and obligations, arising from the terms, provisions and conditions set forth in the Policies with respect to coverage for Defendant HELIX in the Underlying Action.

30.     Plaintiffs contend that under the terms and conditions of the Policies, they have no current obligation, nor did they ever have an obligation to indemnify HELIX against the claims asserted in the Underlying Action.  Specifically as set forth above, the claims do not allege liability based upon "property damage" caused by an "occurrence" that occurred during the respective policy periods and is not excluded by one or more of the above exclusions. Based upon information and belief, Plaintiffs allege that Defendants' position is the contrary.

31.     Since an actual and present controversy now exists between Plaintiffs and Defendants concerning Plaintiffs' duty to indemnify HELIX with respect to the Underlying Action, a judicial determination is necessary and appropriate under the circumstances.    Plaintiffs seek this declaration against both Defendants. Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## THIRD CLAIM FOR RELIEF

### (Reimbursement of Defense Fees and Costs)

### (Against Defendant Helix and DOES 1 through 10)

32.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 31 above as though fully set forth herein.

33.     Plaintiffs have provided and continue to provide a defense to HELIX in reference to the Underlying Action under a full reservation of rights set forth in correspondence to the insured dated October 1, 2015.

34.     Plaintiffs contend that payments made in defense of HELIX in the Underlying Action were improper as no potential for coverage exists or ever existed for any loss, claim or damage alleged in the Underlying Action.

35.     In its reservation of rights letters, Plaintiffs specifically reserved their right to seek reimbursement of monies spent in defense of uncovered claims under the California Supreme Court holding of *Buss v. Superior Court* (1997) 16 Cal.4th 35.

36.     Plaintiffs incurred and continue to incur significant fees and costs in defense of uncovered claims asserted against HELIX in the Underlying Action.

37.     Plaintiffs are entitled to reimbursement from Defendants of fees and costs expended in defense of these uncovered claims and defendants have an obligation to reimburse Plaintiffs for sums expended in defense of uncovered claims under *Buss v. Superior Court.*

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

///

**COMPLAINT**

1756764v.1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants in an amount in excess of the jurisdictional limits of this Court as follows:

1.     For a judicial determination on the First Cause of Action that Plaintiffs have no duty or obligation under the Policies to defend HELIX in the Underlying Action;

2.     For a judicial determination on the Second Cause of Action that Plaintiffs have no duty or obligation under the Policies to indemnify HELIX in the Underlying Action;

3.     On the Third Cause of Action, for an award in monetary damages owed by HELIX and DOES 1 through 10, based on their share of the fees, costs and expenses Plaintiffs incurred and continue to incur in connection with the defense of HELIX in the Underlying Action, the amount of which is to be determined at trial;

4.     For other general damages according to proof;

5.     For pre- and post- judgment interest as provided by law;

6.     For costs of suit herein; and

7.     For such other relief as the Court deems just and proper.


Dated:  December 28, 2017                    WILSON, ELSER, MOSKOWITZ,
                                             EDELMAN & DICKER LLP


                                             By:  S/S *Dawn A. Silberstein*
                                             John H. Podesta
                                             Dawn A. Silberstein
                                             Attorneys for Plaintiffs
                                             Ironshore Specialty Insurance Co

1756764v.1